**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISON**
**DIVISION OF ST. THOMAS AND ST. JOHN**

---

In re:

EQUIVEST ST. THOMAS, INC.,

        Debtor

Chapter 11

Case No.: 07-30011 (JKF)

---

**CHAPTER 11 PLAN OF REORGANIZATION**
**FOR EQUIVEST ST. THOMAS, INC.**


FORMAN HOLT ELIADES & RAVIN LLC
Daniel M. Eliades, Esq. (DME-6203)
80 Route 4 East
Paramus, New Jersey 07652
(201) 845-1000

-and-

DUDLEY, TOPPER AND FEUERZEIG, LLP
Gregory H. Hodges, Esq. (VI174)
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, U.S.V.I. 00804-0756
(340) 774-4422

Counsel for Debtor

# TABLE OF CONTENTS

ARTICLE I:    DEFINED TERMS AND INTERPRETATION…………………………  1

1.1    Interpretations…………………………………….………………..  1
1.2    Application of Definitions and Rules of Construction
Contained in the Bankruptcy Code.…………………………………………  1
1.3    Definitions.................................................................................  1

ARTICLE II:    CLASSIFICATION OF CLAIMS AND DEBTOR INTERESTS……….  7

2.1    Claims Classified……………………………………………………  7
2.2    Administrative Claims…………………………………………………  7
2.3    Claims and Debtor Interests…………………………………………...  8
        Class 1………………………………………………………………  8
        Class 2………………………………………………………………  8
        Class 3………………………………………………………………  8
        Class 4……………………………………………………………...  8
        Class 5………………………………………………………………  8
        Class 6………………………………………………………………  8
        Class 7………………………………………………………………  8
        Class 8………………………………………………………………  8
        Class 9......................................................................................  8
        Class 10……………………………………………………………  8
        Class 11……………………………………………………………  8
        Class 12……………………………………………………………  9
        Class 13……………………………………………………………  9

ARTICLE III: IDENTIFICATION OF IMPAIRED CLASSES OF
CLAIMS AND DEBTOR INTERESTS…………………………………  9

3.1    Unimpaired Classes of Claims…………………………………………  9
3.2    Impaired Classes of Claims and Debtor Interests…………………………..  9
3.3    Impairment Controversies…………………………………………...  9

ARTICLE IV: TREATMENT OF CLASSES OF CLAIMS
AND DEBTOR INTERESTS……………………………………………  9

4.1    Claims and Debtor Interests…………………………………………  9
        Class 1 ……………………………………………………………  9
        Class 2 ……………………………………………………………  10
        Class 3 ……………………………………………………………  10
        Class 4 ……………………………………………………………  11
        Class 5 ……………………………………………………………  11
        A.    Title and ownership of the Hotel Property at Bluebeard's
              Castle……………………………………………………  11
        B.    Assignment of the Bluebeard's Castle Leases ……………………  12
        C.    Relief from the Deposit Order and Management

|  |  | Agreement ………………………………………………….. | 12 |
| D. | | Disposition of Escrow Fund ………………………………….. | 13 |
| E. | | Payment of Additional Settlement Amount ……………………… | 13 |
| F. | | Use of Initial Liquid Settlement Consideration …………………. | 13 |
| G. | | Certain Occupancy Consideration …………………………….. | 13 |
| H. | | Voting ………………………………………………………… | 13 |
| I. | | Releases ……………………………………………………….. | 13 |
| J. | | No Impact on Internal Ownership ……………………………… | 14 |
| K. | | Incorporation of Settlement Agreement………………………… | 14 |
| L. | | Acceptance by Certain Holders of Class 5 Claims……………… | 14 |
| Class 6 …………………………………………………………….. | | | 14 |
| A. | | Title and ownership of the Elysian Hotel Property …………….. | 14 |
| B. | | Assignment of the Elysian Leases …………………………….. | 15 |
| C. | | Amendment to Declaration and By-Laws ………………………. | 15 |
| D. | | No Impact on Interval Ownership ……………………………… | 15 |
| E. | | Other Consideration …………………………………………… | 15 |
| Class 7 …………………………………………………………….. | | | 16 |
| A. | | Title and ownership of the BBC Hotel Property ……………….. | 16 |
| B. | | Assignment of the BBC Leases ……………………………….. | 16 |
| C. | | Amendment to Declaration and By-Laws ………………………. | 17 |
| D. | | No Impact on Interval Ownership ……………………………… | 17 |
| E. | | Other Consideration …………………………………………… | 17 |
| Class 8 …………………………………………………………….. | | | 18 |
| Class 9 …………………………………………………………….. | | | 18 |
| Class 10 …………………………………………………………… | | | 19 |
| Class 11 …………………………………………………………… | | | 19 |
| A. | | Rejection of Vacation License…………………………………. | 20 |
| B. | | Receipt of Cash or deed………………………………………… | 20 |
| C. | | Transfer Tax………………………………………………….. | 21 |
| D. | | Retention of Claims of ESTI……………………………………. | 21 |
| Class 12 …………………………………………………………… | | | 22 |
| Class 13……………………………………………………………. | | | 23 |

ARTICLE V:  PROVISIONS FOR TREATMENT OF UNCLASSIFED CLAIMS……. 23

| 5.1 | Administrative Claims………………………………………….. | | 23 |
| | a. | Time for Filing Administrative Claims …………………………. | 23 |
| | b. | Time for Filing Fee Claims ……………………………………. | 23 |
| | c. | Allowance of Administrative Claims …………………………… | 24 |
| | d. | Payment of Administrative Claim ……………………………… | 24 |

| 5.2 | Priority Tax Claims ……………………………………………. | | 24 |

ARTICLE VI: MEANS FOR EXECUTION OF THE PLAN………………………... 25

| A. | Means for Implementation of Plan ……………………………………. | 25 |
| B. | Post-Confirmation Structure ………………………………………….. | 25 |
| | 1. | Continued Corporate Existence of ESTI ……………………….. | 25 |
| | 2. | Utilize Directors and Officers; Effectuating Documents; | |

|  |  | Further Transactions ………………………………………….. | 25 |
|  | 3. | Rights, Powers and Duties of the Management ……………….. | 25 |
| C. | Funding ……………………………………………………………. | 26 |
| D. | Post Confirmation Fees and Costs ……………………………….. | 26 |
| E. | Distributions ………………………………………………………. | 26 |
| F. | Provisions for Treatment of Disputed Claims …………………….. | 27 |
| G. | Pending Actions …………………………………………………… | 27 |
| H. | Retention of Jurisdiction …………………………………………… | 27 |
| I. | Non-Severability of Plan Provisions ……………………………… | 27 |
| J. | Modification of the Plan …………………………………………… | 27 |
| K. | Avoidance Actions …………………………………………………. | 28 |
| L. | Non-Consensual Confirmation …………………………………….. | 28 |

ARTICLE VII: ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS
OR DEBTOR INTERESTS……………………………………….....    28

| 7.1 | Classes Entitled to Vote…………………………………………… | 28 |
| 7.2 | Class Acceptance Requirement…………………………………….. | 28 |
| 7.3 | Confirmation Without Acceptance…………………………………. | 28 |

ARTICLE VIII: PROVISIONS GOVERNING DISTRIBUTIONS…………………….    28

| 8.1 | Date of Distributions……………………………………………… | 28 |
| 8.2 | Means of Cash Payment…………………………………………… | 28 |
| 8.3 | Delivery of Distributions………………………………………….. | 28 |
| 8.4 | Time Bar to Cash Payments……………………………………….. | 28 |

ARTICLE IX: INJUNCTION, RELEASES & DISCHARGE …………………………    29

| 9.1 | Discharge ………………………………………………………….. | 29 |
|  | 9.1.1 Discharge of the Debtor and Related Discharge Injunction………… | 30 |
| 9.2 | ESTI Related Entity Injunction ……………………………………. | 30 |
|  | 9.2.1 Injunction ………………………………………………………. | 31 |
|  | 9.2.2 Reservations from the ESTI Related Entity Injunction …………… | 31 |
| 9.3 | Released Matters Injunction ……………………………………….. | 32 |
|  | 9.3.1  Injunction ……………………………………………………….. | 32 |
|  | 9.3.2  Reservations from the Related Matters Injunction ……………….. | 32 |
| 9.4 | Term of Certain Injunctions and Automatic Stay …………………… | 33 |
|  | 9.4.1  Injunctions and/or Automatic Stay in Exercise Immediately |  |
|  | Prior to Confirmation …………………………………………… | 33 |
|  | 9.4.2  Injunctions Provided for this Plan ……………………………… | 33 |
| 9.5 | Additional Releases and Indemnification …………………………… | 33 |
|  | 9.5.1  Representatives of the Debtor …………………………………… | 33 |
|  | a.    Release of Representatives of the Debtor ………………… | 33 |
|  | b.    Indemnification of Representatives of the Debtor ……….. | 34 |
|  | 9.5.2  Releases Per Settlement Agreement …………………………….. | 34 |
|  | 9.5.3  Specific Releases by Holders of Claims or Equity Interests ……. | 34 |

ARTICLE X:  TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES…………………………………………    34

10.1    Executory Contracts and Unexpired Leases……………………………..    34
10.2    Cure of Defaults……………………………………………………………    35
10.3    Claims Based on Rejection of Executory Contracts
or Unexpired Leases………………………………………………………...    35

ARTICLE XI: OBJECTIONS TO CLAIMS…………………………………………    35

11.1    Objection Deadline…………………………………………………………    35
11.2    Treatment of Disputed Claims……………………………………...    35

ARTICLE XII:        MISCELLANEOUS PROVISIONS……………………………    36

12.1    Effect of Confirmation Order………………………………………………    36
12.2    Binding Effect………………………………………………………………    36
12.3    Retention of Jurisdiction……………………………………………………    36
12.4    Failure of Court to Exercise Jurisdiction………………………………...    37
12.5    Modification of Plan………………………………………………………..    37
12.6    Inconsistencies Between Plan and Disclosure Statement…..……………    37

# ARTICLE I

## DEFINED TERMS AND INTERPRETATION

**1.1.** **Interpretation.** For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined elsewhere in the Plan or the Disclosure Statement shall have the meanings assigned to them in this Article of the Plan. Unless otherwise specified, all paragraph, section, article, or exhibit references in the Plan are to the respective paragraph, section, article, or exhibit to the Plan, as the same may be amended or modified. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**1.2** **Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.** Words and terms defined in the Bankruptcy Code shall have the same meaning when used in the Plan, unless a specific different definition is given in the Plan. The rules of construction in Bankruptcy Code Section 102 apply to construction of the Plan.

**1.3** **Definitions.** The capitalized terms used herein have the respective meanings set forth below:

(a) "Administrative Claim" means a Claim for a cost or expense of administration in the Chapter 11 Case asserted pursuant to Bankruptcy Code Section 503(b).

(b) "Allowed" shall mean with respect to a Claim (other than an Administrative Expense Claim) or an Interest: (a) any Claim against or Interest in the Debtor, proof of which was timely filed pursuant to the Bankruptcy Code, the Bankruptcy Rules or an Order of the Court or (b) any Claim or Interest that has been or hereinafter is, listed in the Schedules as liquidated in amount and not disputed or contingent and, in each such case of (a) and (b) above, as to which either (i) no objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Plan, the Confirmation Order, or other Order of the Court or (ii) an objection has been filed and the Claim or Interest has been allowed by a Final Order, but only to the extent so allowed.

(c) "Allowed Amount" shall mean with respect to a particular Claim (a) if the Holder of such Claim has not filed a Proof of Claim as prescribed by Order of the Bankruptcy Court within the applicable period fixed by such Court, pursuant to Bankruptcy Rule 3003, the amount, if any, of such Claim that is listed in the Schedules as being not disputed, contingent or unliquidated; (b) if the Holder of such Claim has duly and timely filed a Proof of Claim, (i) the amounts stated in such Proof of Claim if no objection to such Proof of Claim is interposed within the applicable period of limitations fixed by the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law; or (ii) such amount as shall be fixed as the Allowed Amount thereof by a Final Order if an objection is interposed within the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law.

(d) "Allowed Claim" shall mean: (a) any Claim, proof of which is/was filed with the Bankruptcy Court on or before the date designated by the Bankruptcy Court as the last date(s)

for filing Proofs of Claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by an order or judgment of the Bankruptcy Court, or as to which any objection has been determined by an order or judgment of the Bankruptcy Court (allowing such Claim in whole or in part) that is no longer subject to appeal or certiorari proceedings, and as to which no appeal or certiorari proceeding is pending; (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan; or (c) a request for payment of an Administrative Expense, which is made before the Administrative Claims Bar Date, or otherwise has been deemed timely asserted under applicable law, and is an Administrative Expense as to which no objection to allowance thereof has been filed within the applicable deadline pursuant to Sections 2.3 of the Plan.

(e)    "Asset" means, with respect to the Debtor, any and all property in which the Debtor has an interest within the meaning of Bankruptcy Code Section 541.

(f)    "Bankruptcy Code" means title 11 of the United States Code, together with all amendments and modifications to the extent applicable to this Chapter 11 Case.

(g)    "Bankruptcy Court" means the District Court of the Virgin Islands, Bankruptcy Division, Division of St. Thomas and St. John., having subject matter jurisdiction over this Chapter 11 Case.

(h)    "Bankruptcy Estate" means the estate of the Debtor created pursuant to Bankruptcy Code Section 541 and this Plan.

(i)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, together with all amendments and modifications to the extent applicable to this Chapter 11 Case.

(j)    "Bar Date" means November 12, 2007, the date fixed by the Bankruptcy Court by which any and all Proofs of Claim, except for those of governmental units, were required to be filed against the Debtor, or such other date established by Final Order of the Bankruptcy Court.

(k)    "Business Day" means any day except Saturday, Sunday, or any legal holiday expressly set forth in Bankruptcy Rule 9006(a).

(l)    "Cash" means legal tender of the United States of America or cash equivalents.

(m)    "Chapter 11 Case" means the Debtor's bankruptcy case, currently under Chapter 11 of the Bankruptcy Code.

(n)    "Claim" means any right to payment, or to seek payment, from the Debtor or the Bankruptcy Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or

unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor or the Bankruptcy Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured, or unsecured.

(o)     "Claimant" means the holder of a Claim.

(p)     "Class" means a category of holders of Claims or Debtor Interests as provided for in Article II of the Plan.

(q)     "Collateral" means any Asset subject to an unavoidable Lien or right of set-off securing payment of a Claim.

(r)     "Confirmation Date" means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

(s)     "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court, and any adjournment or continuation thereof, at which the Plan Proponent requests confirmation of the Plan.

(t)     "Confirmation Order" means the order of the Bankruptcy Court or any other court of competent jurisdiction which is entered confirming the Plan.

(u)     "Contested Claim," means a Claim against the Debtor, other than an allowed Administrative Claim, (i) that is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated, or (ii) that is the subject of a Proof of Claim to which an objection has been filed.

(v)     "Creditor" means an entity that has Claim against the Debtor which arose at the time of or before the Petition Date; or an entity that has a Claim against the Debtor's Bankruptcy Estate of a kind specified in Bankruptcy Code Sections 348(d), 502(f), (g), (h) or (i).

(w)     "Debtor" means Equivest St. Thomas, Inc.

(x)     "Debtor's Estate" shall mean all property of the Bankruptcy Estate of Debtor as defined in 11 U.S.C. 541.

(y)     "Debtor Interests" or "Interests" means the equity interest in the Debtor and all right, title and interest of the Debtor, including but not limited to, the right to receive stock dividends and the right/ability to vote, hold or control any shares of the Debtor.

(z)     "Deficiency Claim" means the Claim of any holder of a Secured Claim, which is not being cured and reinstated and which by contract between the Debtor and the Claimant enables the Claimant to seek payment from the Debtor for the difference, if any, between the Allowed Claim and the value of the Collateral securing the Allowed Claim.

3

(aa)    "Disallowed Claim" means any Claim or portion thereof which has been disallowed by a Final Order or which has been determined pursuant to this Plan, not to be compensable, and, therefore should not become an Allowed Claim, but which, nonetheless, is discharged, released and enjoined pursuant to the Plan.

(bb)    "Disbursing Agent" means the Debtor.

(cc)    "Disclosure Statement" means the disclosure statement prepared by the Debtor pursuant to 11 U.S.C. §1125(a), which was approved by the Court on April 25, 2008.

(dd)    "Disputed Claim" means a Claim that has not become an Allowed Claim.

(ee)    "Distribution Date" means the date on which a distribution on a Claim is to be made pursuant to the Plan.

(ff)    "Effective Date" of the Plan shall occur one (1) day after the Confirmation Order pursuant to 11 U.S.C. § 1129 becomes a Final Order.

(gg)    "Entity" means an individual, personal representative, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof, or other Person or Entity, as those terms are defined at Section 101(15) and (41) of the Bankruptcy Code.

(hh)    "ESTI Related Defendants" means Fairfield Resorts, Inc., n/k/a Wyndham Vacation Resorts, Inc.; Equivest Finance Inc.; Fairfield Resort Management Services, Inc., f/k/a RCI Resort Management, Inc.; Equivest Capital Inc., f/k/a Resort Funding, Inc.; Cendant Corporation, n/k/a Avis Budget Group, Inc.; Cendant Timeshare Resort Group, Inc. n/k/a Wyndham Vacation Ownership, Inc.; Peter Hernandez; John Johnson; Scott Nassar; Resort Management, Inc.; Peppertree Resorts Management, Inc.; and Peppertree Resorts, Ltd.

(ii)    "Face Amount" means with respect to a particular Claim: (a) if the Claim is listed in the Schedules and the holder of such Claim has not filed a Proof of Claim with the Bankruptcy Court within the applicable period of limitations fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the amount of such claim as is listed in the Schedules is not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a Proof of Claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court, pursuant to the Bankruptcy Code, the Bankruptcy Rules or other applicable law, the liquidated amount stated in such Proof of Claim, or such amount as is determined by Final Order; or (c) in the case of an Administrative Expense Claim, the liquidated amount set forth in any application properly filed with the Bankruptcy Court or the amount contained in the Debtor's books and records, or such amount as is determined by Final Order of the Court.

(jj)    "Federal Tax Liability" means any liability of the Debtor including penalties and interest, to the United States of America pursuant to the Tax Code, for income or gain, whether actual or imputed.

4

(kk)    "Fee Application" means an application under Bankruptcy Code Section 330 or 503 for an allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(ll)    "Fee Claim" means a Claim under Bankruptcy Code section 330 and 503 for an allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

(mm)    "Final Order" means an Order or Judgment of the Bankruptcy Court, as applicable, as entered on the docket that (a) is not stayed, (b) has not been reversed, modified or amended, and (c) as to which the time to appeal, petition for certiorari, or seek reargument, review, reconsideration, rehearing or leave to appeal (excluding the time to move for relief from a final order or judgment under Rule 66(b) of the Federal Rules of Civil Procedure and the time to request revocation of an order of confirmation under Section 1144 of the Bankruptcy Code) has expired and as to which no appeal, petition for certiorari or other proceeding for reargument, review, reconsideration, rehearing or leave to appeal (including a motion for relief from a final order or judgment under said Rule 60(b) or a request for revocation of an order of confirmation under said section 1144) is pending, or as to which any right to appeal, petition for certiorari or seek reargument, review, reconsideration, rehearing or leave to appeal has been waived in writing, or, if any appeal, petition for certiorari, or other proceeding for reargument, review, reconsideration, rehearing or leave to appeal has been sought, the order or judgment in question has been affirmed by the highest court to which the order or judgment was appealed or from which the argument or rehearing was sought, or certiorari has been denied and the time to take any further appeal, petition for certiorari or seek further reargument, review, reconsideration, rehearing or leave to appeal (excluding the time to move for relief from a final order or judgment under said Rule 60(b) and the time to request revocation of an order of confirmation under said Section 1144) has expired.

(nn)    "General Unsecured Claim"" means any Claim that is not an Administrative Claim, a Fee Claim, a Non-Tax Priority Claim, a Priority Tax Claim, an Insider Claim, a Secured Claim or an Interest in the Debtor and includes all Deficiency Claims.

(oo)    "Holder" means the beneficial holders of any Claim or Interest.

(pp)    "Impaired" when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interests", shall mean that the Plan alters the legal, equitable or contractual rights of the members of Class, and as otherwise ascribed to such term in Section 1124 of the Bankruptcy Code.

(qq)    "Insider" means any person as defined at 11 U.S.C. § 101(31) of the Bankruptcy Code.

(rr)    "Interval Owner" means a current or former owner of a timeshare interval at any of the Resorts, other than ESTI.

(ss)    "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

5

(tt)     "Objection Deadline" means the date by which objections to Claims must be filed; to wit, sixty (60) days after the Effective Date, or such later date as may be established by Order of the Bankruptcy Court.

(uu)     "Ordinary Course Administrative Expense Claim" means an Administrative Expense Claim that results from debts incurred by the Debtor Post-Petition, in the ordinary course of its business.

(vv)     "Person" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

(ww)     "Petition Date" means July 2, 2007.

(xx)     "Plan" means this Chapter 11 plan as it may be amended from time to time in compliance with the Bankruptcy Code and the Bankruptcy Rules.

(yy)     "Plan Administrator" means Debtor.

(zz)     "Plan Injunctions" shall mean the permanent injunctions described in Article IX of this Plan which shall be included in the Confirmation Order and the issuance of which is a condition precedent to confirmation of the Plan.

(aaa)     "Plan Proponent" means Debtor.

(bbb)     "Professional Person" means a Person retained or to be compensated pursuant to Bankruptcy Code Section 327, 328, 330, 503(b)(2), (3), (4), (5) or 1103.

(ccc)     "Proof of Claim" means a document (i) identical to or (ii) substantially similar to, and containing the information required by Official Form 10 of the Bankruptcy Rules.

(ddd)     "Pro Rata" means, with respect to a distribution the ratio of the dollar amount of the Claim or Debtor Interest in the indicated Class to the aggregate dollar amount of all Claims or Debtor Interests in the indicated Class (including in each such calculation the full amount of Contested Claims or Debtor Interests in the Class as of that date, but excluding any Contested Claims or Debtor Interests which have been disallowed by a Final Order).

(eee)     "Released Persons" shall mean ESTI and the ESTI Related Defendants as well as their respective predecessors, successors, assigns, heirs, agents, representatives, direct and indirect parent companies, subsidiaries and affiliates, member companies, managers, vendors, distributors, brokers, retailers, officers, directors, employees, shareholders, attorneys, sureties, insurers, partners, members, departments and divisions of all such persons or entities, and any person or entity alleged to be liable derivatively through any of the foregoing.

(fff)     "Reorganized Debtor" means the Debtor after the Effective Date of the Plan.

(ggg)  "Secured Claim" means (i) a Claim secured by a Lien which is valid, perfected and enforceable under applicable law and is not avoidable under the Bankruptcy Code or other applicable non-bankruptcy law; (ii) a Claim allowed under the Plan as a Secured Claim, and (iii) the secured portion of a Claim whose Lien is preserved under Bankruptcy Code section 506(d)(1).  Secured Claims do not include any Claims secured by a Lien against the assets of any Partnership.

(hhh)  "State Tax Liability" means any tax liability of the Debtor for income or gain, whether actual or imputed, including penalties and interest, which is not a Federal Tax Liability.

(iii)  "Tax Attribute" means those rights of the Debtor to exclude or offset income and avoid taxation set forth in Tax Code section 1398(g), including any net operating loss carry-forward, any charitable contribution carry-forward, any credit carry-forward, any capital loss carry-forward, any passive activity loss carry-forward, and any basis, holding period or other character of any Asset to which the Debtor were entitled as of the Petition Date or which arises from or relates to any Asset after the Petition Date but prior to the entry of a Final Decree.

(jjj)  "Tax Claim" means any Federal Tax Liability or State Tax Liability.

(kkk)  "Tax Code" means the Internal Revenue Code of 1986, 26 U.S.C. § 1 et seq., as amended from time to time, and corresponding provisions of any subsequent federal revenue act. A reference to a section of the Tax Code shall include a reference to any and all Treasury regulations interpreting, limiting or expanding such section of the Tax Code.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND DEBTOR INTERESTS

The Plan classifies Claims and Debtor Interests into various Classes.  The Plan states whether each Class of Claims or Debtor Interests is Impaired or not Impaired.  Certain types of Claims are not placed into voting Classes.  They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

2.1   **Claims Classified.**  All Claims and Debtor Interests, except for Administrative Claims and Priority Tax Claims, shall be classified as forth in Section 2.3 of the Plan

2.2   **Administrative and Priority Tax Claims.**  As provided by Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtor or the Bankruptcy Estate shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims as set forth in Article V of the Plan.

**2.3** **Claims and Debtor Interests.** The Claims and Debtor Interests are classified as follows:

Class 1:  Class 1 consists of all Secured Claims of the United States of America.

Class 2:  Class 2 consists of all Secured Claims of the Government of the Virgin Islands.

Class 3: Class 3 consists of all Secured Claims which are not classified as Class 1 or Class 2 claims.

Class 4:  Class 4 consists of all Claims to the extent entitled to priority under Section 507(a) of the Bankruptcy Code, other than Administrative Claims and Priority Tax Claims.

Class 5:  Class 5 consists of any and all Claims of the Bluebeard's Castle Associations and/or all current or former interval owners at Bluebeard's Castle (including the District Court Action Plaintiffs).

Class 6:  Class 6 consists of any and all Claims of the Elysian Association and/or all current or former interval owners at the Elysian Beach Club and Resort.

Class 7:  Class 7 consists of any and all Claims of the BBC Association and/or all current or former interval owners at the Bluebeard's Beach Club & Villas.

Class 8:  Class 8 consists of any and all General Unsecured Claims which are not classified as Administrative Claims, Priority Tax Claims, Class 1-7 Claims or Class 9-12 Claims.

Class 9:  Class 9 consists of any and all Claims which (i) are <u>not</u> classified as Administrative Claims, Priority Tax Claims, Class 1-8 Claims or Class 10-12 Claims; (ii) are covered by any insurance policies in which the Debtor may have an interest, including any civil liability, property, casualty or workmen's compensation and/or directors and officers liability insurance policies; and (iii) are the subject of an Order of the Bankruptcy Court granting stay relief as of the Effective Date.

Class 10:  Class 10 consists of any and all Claims which (i) are <u>not</u> classified as Administrative Claims, Priority Tax Claims, Class 1-9 Claims or Class 11-12 Claims; and (ii) are covered by any insurance policies in which the Debtor may have an interest, including any civil liability, property, casualty or workmen's compensation and/or directors and officers liability insurance policies.  A Claim is a Class 10 Claim only to the extent of the insurance coverage. Any portion of an otherwise Class 10 Claim that constitutes a deductible, premium, retention or other payment required to be made by the Debtor shall constitute a Class 8 General Unsecured Claim.

Class 11:  Class 11 consists of the Claims or interests of all parties which hold or claim a license or deed interest in Unit 254 at Hilltop Villas at Bluebeard's Castle.

Class 12:  Class 12 consists of the pre petition Claims of Wyndham Vacation Ownership, Inc.

Class 13:  Class 13 is comprised of the Debtor Interests.

## ARTICLE III

## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND DEBTOR INTERESTS

**3.1**     **Unimpaired Classes of Claims.**  Claims of Classes 7 and 9.

**3.2**     **Impaired Classes of Claims.**  Claims of Classes 1-5, 8 and 10-12.

**3.3**     **Impairment Controversies.**  If a controversy exists as to whether any Claim, or any Class of Claims, is Impaired, the Bankruptcy Court shall determine such controversy before or at the Confirmation Hearing.

## ARTICLE IV

## TREATMENT OF CLASSES OF CLAIMS AND DEBTOR INTERESTS

**4.1**     **Claims and Debtor Interests.**  The Classes of Claims and Debtor Interests shall be treated as follows:

**Class 1 – Secured Claim of the United States of America.**

Identity.          Class 1 consists of all Secured Claims of the United States of America.

Impairment.     Class 1 Secured Claims are Impaired.

Treatment.       Each Holder of an Allowed Class 1 Secured Claim shall, to the extent not already satisfied pursuant to transactions approved by the orders of the Bankruptcy Court, retain their existing liens and receive, at the option of the Debtor, in full satisfaction, settlement and release of and in exchange for such Allowed Class 1 Secured Claim: (A) Cash equal to the full amount of such unpaid Allowed Secured Claim on (i) a date within thirty (30) days of the Effective Date, if such Secured Claim is Allowed as of the Effective Date, or (ii) a date within thirty (30) days after the date such Secured Claim is Allowed by Final Order; or (B) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Allowed Secured Claim and the Debtor.

Within fifteen (15) days of: (A) payment to the Holder of the full amount of any Allowed Class 1 Secured Claim, or (B) the entry of a Final Order disallowing any Class 1 Secured Claim, such Holder shall take all necessary action to remove and discharge any federal tax lien or any other lien securing the Class 1 Secured Claim and involving the Debtor or Assets of the Debtor.  The Holder shall take all such action at no cost to the Debtor.

9

**Class 2 – Secured Claim of the Government of the Virgin Islands.**

Identity.      Class 2 consists of all Secured Claims of the Government of the Virgin Islands.

Impairment.      Class 2 Secured Claims are Impaired.

Treatment.      Each Holder of an Allowed Class 2 Secured Claim shall, to the extent not already satisfied pursuant to transactions approved by the orders of the Bankruptcy Court, retain their existing liens and receive, at the option of the Debtor, in full satisfaction, settlement and release of and in exchange for such Allowed Class 2 Secured Claim: (A) Cash equal to the full amount of such unpaid Allowed Secured Claim on (i) a date within thirty (30) days of the Effective Date, if such Secured Claim is Allowed as of the Effective Date, or (ii) a date within thirty (30) days after the date such Secured Claim is Allowed by Final Order; or (B) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Allowed Secured Claim and the Debtor.

Within fifteen (15) days of: (A) payment to the Holder of the full amount of any Allowed Class 2 Secured Claim, or (B) the entry of a Final Order disallowing any Class 2 Secured Claim, such Holder shall take all necessary action to remove and discharge any tax lien or any other lien securing the Class 2 Secured Claim and involving the Debtor, the Hotel Property or other Assets of the Debtor.  The Holder shall take all such action at no cost to the Debtor.

**Class 3 – Secured Claims.**

Identity.      Class 3 consists of any and all Secured Claims which are not classified as Class 1 or Class 2 Claims.  The Debtor believes that there are or will be no Allowed Class 3 Secured Claims.

Impairment.      Class 3 Secured Claims are Impaired.

Treatment.      Each Holder of an Allowed Class 3 Secured Claim shall, to the extent not already satisfied pursuant to transactions approved by the orders of the Bankruptcy Court, retain their existing liens and receive, at the option of the Debtor, in full satisfaction, settlement and release of and in exchange for such Allowed Class 3 Secured Claim: (A) Cash equal to the full amount of such unpaid Allowed Secured Claim on (i) a date within thirty (30) days of the Effective Date, if such Secured Claim is Allowed as of the Effective Date, or (ii) a date within thirty (30) days after the date such Secured Claim is Allowed by Final Order; or (B) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Allowed Secured Claim and the Debtor.

Within fifteen (15) days of: (A) payment to the Holder of the full amount of any Allowed Class 3 Secured Claim, or (B) the entry of a Final Order disallowing any Class 3 Secured Claim, such Holder shall take all necessary action to remove and discharge any lien securing the Class 3 Secured Claim and involving the Debtor or Assets of the Debtor.  The Holder shall take all such action at no cost to the Debtor.

10

**Class 4 – Classified Priority Claims.**

Identity.        Class 4 Classified Priority Claims consists of all Claims to the extent entitled to priority under Section 507(a) of the Bankruptcy Code, other than Administrative Claims and Priority Tax Claims.  The Debtor believes that it has satisfied all Allowed Classified Priority Claims pursuant to Orders of the Bankruptcy Court and therefore estimates that there are no unpaid, allowed or allowable Classified Priority Claims.

Impairment.        Class 4 Classified Priority Claims are Impaired.

Treatment.        To the extent that there are any Allowed Classified Priority Claims that have not been satisfied as of the Effective Date pursuant to Orders of the Bankruptcy Court, each Holder of such Allowed Classified Priority Claim shall receive, at the option of the Debtor, in full satisfaction, settlement and release of and in exchange for such Allowed Classified Priority Claim: (A) Cash equal to the full amount of such unpaid Allowed Classified Priority Claim on (i) a date within thirty (30) days of the Effective Date, if such Classified Priority Claim is Allowed as of the Effective Date, or (ii) a date within thirty (30) days after the date such Classified Priority Claim is Allowed by Final Order; or (B) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Allowed Classified Priority Claim and the Debtor.

**Class 5 – Claims of Bluebeard's Castle Associations and/or all Current or Former Interval Owners at Bluebeard's Castle.**

Identity.        Class 5 consists of any and all Claims of the Bluebeard's Castle Associations and/or all current or former interval owners at Bluebeard's Castle (including the District Court Action Plaintiffs).[1]  Class 5 includes, but is not limited to, (i) all Claims of the Bluebeard's Castle Associations, on behalf of themselves and their current or former members, which are or which could have been asserted in the Shared Use Action, the Superior Court Action and/or the proofs of claim filed by the Bluebeard's Castle Associations, (ii) all Claims of the District Court Action Plaintiffs which are or which could have been asserted in the District Court Action and/or the proofs of claim filed by the District Court Action Plaintiffs, and (iii) any Claims of current or former interval owners at Bluebeard's Castle.

Impairment.        This Class is Impaired.

Treatment.        Holders of Allowed Class 5 Claims shall receive in full satisfaction, settlement and release of and in exchange for such Allowed 5 Claims:

(A)        Title and ownership of the Hotel Property at Bluebeard's Castle.  On the Effective Date, ESTI shall convey title and ownership of the portion of the Hotel Property currently owned by ESTI at Bluebeard's Castle, as defined in the Bluebeard's Castle Association Declarations as amended (the "Hotel Property"), in "as is/where is" condition, to the Bluebeard's Castle

---

[1] This Class does no t include Claims or interests of parties which hold or claim a license or deed interest in Unit 254 at Hilltop Villas at Bluebeard's Castle.  The Claims or interests of such parties are addressed in Class 11.

Associations (the "Bluebeard's Castle Transfer") pursuant to 11 U.S.C. §363(c), (f) and (m) as well as *Restatement (Third) of Property, Servitudes, §6.19,* adopted as operative law in the Virgin Islands by V.I. Code Ann. title 1, § 4.[2]

The Hotel Property shall be transferred to the Bluebeard's Castle Associations free and clear of all liens, claims and encumbrances including any federal tax lien or real property taxes on the Hotel Property through the transfer date[3] and any monetary judgments of record as of the Petition Date, but shall be transferred subject to utility easements and similar non-monetary encumbrances of record as of the transfer date.

The Bluebeard's Castle Transfer is deemed to constitute a transfer of property and/or delivery of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the Bluebeard's Castle Transfer or otherwise imposed as a result thereof.

(B)      Assignment of the Bluebeard's Castle Leases.      On the Effective Date, the Bluebeard's Castle Leases shall be deemed assumed by the Debtor and assigned to the Bluebeard's Castle Associations pursuant to 11 U.S.C. § 365(a) and (f).  To the extent that the Debtor has collected rent on account of any of the Bluebeard's Castle Leases for a period subsequent to the Effective Date, said rent (less any related expenses paid by the Debtor for the period after the Effective Date) shall be paid to the Bluebeard's Castle Associations on the Effective Date. The assignment of the Bluebeard's Castle Leases shall be deemed to constitute a transfer of property and/or delivery of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the assignment or otherwise imposed as a result thereof.

(C)      Relief from the Deposit Order and Management Agreement.      The Plaintiff Associations' obligations to pay $40,000 to the Clerk of this Court on a monthly basis pursuant to this Court's Order of September 27, 2007 (Docket No. 21 in Adv. Pro. No. 07-03003 (JKF)), (the "Deposit Order"), as modified per the Second Pre-Trial Order in the Shared Use Action, shall terminate upon the date of approval of the Settlement Agreement by the Bankruptcy Court.

The obligations of the Debtor and the Plaintiff Associations under the "Bluebeard's Castle Common Areas Property Management Agreement" dated December 7, 2007 between the Debtor, the Plaintiff Associations and SPM Resorts, Inc. ("SPM") shall terminate on the Effective Date.  The Debtor's obligations under the "Bluebeard's Castle Common Areas Property Management Agreement", the "utilities agreement" and any similar agreement/understanding shall terminate upon the Effective Date.

---

[2] Within fifteen (15) days of the entry of an Order approving the Disclosure Statement, ESTI shall provide the Bluebeard's Castle Associations with proposed amendments to the Bluebeard's Castle Declarations (the "Bluebeard's Castle Declaration Amendments") and any other documents proposed by ESTI to effectuate the transfer of title and ownership of the Bluebeard's Castle Hotel Property to the Bluebeard's Castle Association (the "Bluebeard's Castle Transfer Documents").  The Bluebeard's Castle Declaration Amendments shall include the right of ESTI and/or its successors, assigns and designees to enter upon the Bluebeard's Castle Resort for purposes of marketing, touring, and/or selling its timeshare inventory.  Moreover, nothing contained herein shall be construed to limit or impair ESTI's ability to rent its unsold timeshare inventory.  The Bluebeard's Castle Associations shall consent to the Bluebeard's Castle Transfer Documents and Bluebeard's Castle Declaration Amendments.

[3] ESTI shall assume responsibility for and hold the Bluebeard's Castle Associations harmless from any and all real property taxes on the Hotel Property through the transfer date.

(D)    <u>Disposition of Escrow Fund</u>.  On the Effective Date, ESTI shall convey and assign its interest in the Escrow Fund to the Bluebeard's Castle Associations on behalf of themselves, their current or former members, and their current or former professionals.

(E)    <u>Payment of Additional Settlement Amount</u>.  On the Effective Date, ESTI and/or the ESTI Related Defendants shall pay the Bluebeard's Castle Associations on behalf of themselves, their current or former members, and their current or former professionals, Cash in the amount of $17,500,000 plus any net interest which has accumulated on the this amount from the date of establishment of the account holding the settlement proceeds to the Effective Date.

(F)    <u>Use of Initial Liquid Settlement Consideration.</u>  The Escrow Fund and the amount of $17,500,000 plus net interest, (collectively, the "Initial Liquid Settlement Consideration"), to be paid to the Bluebeard's Castle Associations on the Effective Date shall be utilized by the Bluebeard's Castle Associations in the following manner:

(i)    for repairs to the Hotel Property; and

(ii)    payment of counsel/professional fees of the Plaintiff Associations, PPCA and/or District Court Action Plaintiffs in the amount of $5.375 million to Rogers Townsend and Thomas, PC subject to liens and claims, if any, of all current and prior counsel and/or other professionals of the Plaintiff Associations, PPCA and/or District Court Action Plaintiffs.

The Bankruptcy Court shall retain jurisdiction over the utilization of the Initial Liquid Settlement Consideration, including any liens and claims, if any, of all current and prior counsel/professionals of the Plaintiff Associations, PPCA and/or District Court Action Plaintiffs.

(G)    <u>Certain Occupancy Consideration</u>.  The District Court Action Plaintiffs shall receive, on account of their proofs of claim, the right to reserve occupancy, subject to availability, for a maximum period of fourteen (14) days during any season in a one or two bedroom unit at any resort affiliated with the Fairshare Plus exchange program managed by Wyndham Vacation Resorts, Inc.  Reservations to utilize such occupancy rights shall be made after the Effective Date (as defined herein) by calling a reservation number to be provided by Debtor.  All occupancy pursuant to this subparagraph must occur prior to December 31, 2009.

(H)    <u>Voting</u>.  The Bluebeard's Castle Associations consent to amendment of the Declarations, as part of the Plan, to allow ESTI to vote its interval interests in all association matters.  ESTI shall abstain from voting for the purpose of electing individuals to the respective boards of directors, and it shall abstain from appointing any such directors.  Notwithstanding anything herein, no limitation on voting agreed to by ESTI shall apply to a bona fide purchaser which acquires title to an interval unit(s) from ESTI or its successors or assigns.

(I)    <u>Releases</u>.  On the Effective Date, the Parties to the Settlement Agreement shall exchange those releases described in the Settlement Agreement.

(J)    <u>No Impact on Interval Ownership</u>.  Subject only to Class 11, ownership rights in an interval at the Bluebeard's Castle Resort are not affected by the Plan.  Moreover, the Plan does not affect any maintenance fee, mortgage or other obligation of an interval owner.

Subject to Class 11, the Plan does not divest or alter any right of ownership in an interval at the Bluebeard's Castle Resort.  Moreover, the Plan does not alter or impact the rights or obligations of any interval owner at the Bluebeard's Castle Resort other than as specifically set forth in the Plan.  Unless specifically modified by or pursuant to the Plan, the Declarations which govern the Bluebeard's Castle Resort and the by-laws which govern the Bluebeard's Castle Associations are unaffected by the Plan.

(K)    <u>Incorporation of Settlement Agreement</u>.  The Plan incorporates all of the terms of the Settlement Agreement, as clarified and approved by Bankruptcy Court on February 14, 2008.

(L)    <u>Acceptance by Certain Holders of Class 5 Claims</u>.  As part of the Settlement Agreement, Bluebeard's Castle Hilltop Villas Condominium Association, Bluebeard's Castle Hilltop Villas I Condominium Association, Bluebeard's Castle Hilltop Villas III Condominium Association, Pirates Pension Condominium Owners Association, Richard W. Fleck, Jeffrey L. Addison, Kenneth Drew, Carol Desnoyers, Patrick Whelan and John E. Kelly are all deemed to vote for and support the Plan.

**Class 6 – Claims of Elysian Association and/or all Current or Former Interval Owners at the Elysian Beach Club and Resort.**

<u>Identity</u>.    Class 6 consists of any and all Claims of the Elysian Association and/or all current or former interval owners at the Elysian Beach Club and Resort.  Class 6 includes, but is not limited to, (i) all Claims of the Elysian Association, on behalf of itself and/or its current or former members, which are or which could have been asserted in any the proofs of claim filed by the Elysian Association, and (ii) any Claims of current or former interval owners at Elysian Beach Club and Resort.

<u>Impairment</u>.    This Class is <u>not</u> Impaired and is deemed to have accepted the Plan.

<u>Treatment</u>.    Holders of Class 6 shall receive no monetary distribution under the Plan. Holders of Allowed Class 6 Claims shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 6 Claims:

(A)    <u>Title and ownership of the Elysian Hotel Property</u>.  As soon as practical after the sale by ESTI of the eighty percent (80%) of the original intervals at the Elysian Beach Club and Resort, ESTI shall convey title and ownership of the portion of the Hotel Property then owned by ESTI at the Elysian Beach Club and Resort, as defined in the Elysian Beach Club and Resort Declaration as amended (the "Elysian Hotel Property"), in "as in/where is" condition, to the Elysian Association (the "Elysian Transfer") pursuant to *Restatement (Third) of Property, Servitudes, §6.19,* adopted as operative law in the Virgin Islands by V.I. Code Ann. title 1, § 4.

The Elysian Transfer shall be deemed to constitute a transfer of property and/or delivery

of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the Transfer or otherwise imposed as a result thereof.

(B)     <u>Assignment of the Elysian Leases</u>.  Simultaneous with the Elysian Transfer, the Elysian Leases then in effect shall be deemed assumed by the Debtor and assigned to the Elysian Association pursuant to 11 U.S.C. § 365(a) and (f).  To the extent that the Debtor has collected rent on account of the Elysian Leases for a period subsequent to the effective date of the Elysian Transfer, said rent (less any related expenses paid by the Debtor for the period after the effective date of the Elysian Transfer) shall be paid to the Elysian Association on the effective date of the Elysian Transfer. The assignment of the Elysian Leases shall be deemed to constitute a transfer of property and/or delivery of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the assignment or otherwise imposed as a result thereof.

(C)     <u>Amendment to Declaration and By-Laws</u>.  Within fifteen (15) days of the entry of an Order approving the Disclosure Statement, ESTI shall provide the Elysian Association with proposed amendments to the Elysian Declaration, Elysian Association by-laws and any other documents proposed by ESTI to effectuate the Elysian Transfer (the "Elysian Transfer Documents").[4]  No later than seven (7) days prior to the first scheduled date for the Confirmation Hearing, the Elysian Association shall provide written notification to counsel for the Debtor of any and all objections to the Elysian Transfer Documents (the "Notice").  If the Elysian Association fails to provide the Notice to counsel for the Debtor within the required period of time: (i) the Elysian Transfer Documents shall be deemed acceptable to the Elysian Association; (ii) the Elysian Association shall have waived any and all objections to the form of the Elysian Transfer Documents; and (iii) the Elysian Association shall promptly execute, endorse and/or accept the Elysian Transfer Documents and any and all other documents reasonably requested by the Debtor to effectuate the Elysian Transfer.  If the Elysian Association provides the Notice to counsel for the Debtor within the required period of time, the Bankruptcy Court will resolve the issues raised in the Notice at the Confirmation Hearing.

(D)     <u>No Impact on Interval Ownership</u>.  Ownership rights in an interval at the Elysian Beach Club and Resort are not affected by the Plan.  Moreover, the Plan does not affect any maintenance fee, mortgage or other obligation of an interval owner.

The Plan does not divest or alter any right of ownership in an interval at the Elysian Beach Club and Resort.  Moreover, the Plan does not alter or impact the rights or obligations of any interval owner at the Elysian Beach Club and Resort other than as specifically set forth in the Plan.  Unless specifically modified by or pursuant to the Plan, the Declaration which governs the Elysian Beach Club and Resort and the by-laws which govern the Elysian Association are unaffected by the Plan.

---

[4] The Declaration Amendments shall include the right of ESTI and/or its successors, assigns and designees to enter upon the Elysian Beach Club and Resort for purposes of marketing, touring, and/or selling its timeshare inventory.  Moreover, nothing contained herein shall be construed to limit or impair ESTI's ability to rent its unsold timeshare inventory.

(E)     Other Consideration.  Holders of Allowed Class 6 Claims will receive no Cash distribution on account of Class 6 Claims.  The Administrative Claims of the Elysian Association have been satisfied by virtue of payment of the outstanding post petition maintenance fees by ESTI.  (Moreover, the Modified Post Petition Financing is projected to enable ESTI to access credit necessary for the Debtor to meet its projected day to day operational needs and to pay upcoming maintenance fees to the Elysian Association).  Said Holders have received or will receive further benefit by: (a) ESTI's performance of the Waste Water Repairs; (b) the Modified Post Petition Financing by WVO; (c) the Exit Financing; (d) the subordination of the WVO Class 12 Claim (which is necessary to effectuate confirmation of the Plan); and (e) funding of the $17,500,000 portion of the Settlement Agreement by the ESTI Related Defendants (which is necessary to effectuate confirmation of the Plan).

**Class 7 – Claims of BBC Association and/or all Current or Former Interval Owners at the Bluebeard's Beach Club & Villas.**

Identity.      Class 7 consists of any and all Claims of the BBC Association and/or all current or former interval owners at the Bluebeard's Beach Club & Villas.  Class 7 includes, but is not limited to, (i) all Claims of the BBC Association, on behalf of itself and/or its current or former members, which are or which could have been asserted in any the proofs of claim filed by the BBC Association, and (ii) any Claims current or former interval owners at Bluebeard's Beach Club & Villas.

Impairment.     This Class is not Impaired and is deemed to have accepted the Plan.

Treatment.      Holders of Class 7 shall receive no monetary distribution under the Plan. Holders of Allowed Class 7 Claims shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 7 Claims:

(A)     Title and ownership of the BBC Hotel Property.  As soon as practical after the sale by ESTI of the eighty percent (80%) of the original intervals at the Bluebeard's Beach Club & Villas, ESTI shall convey title and ownership of the portion of the Hotel Property then owned by ESTI at the Bluebeard's Beach Club & Villas, as defined in the Bluebeard's Beach Club & Villas Declaration as amended (the "BBC Hotel Property"), in "as is/where is" condition, to the BBC Association (the "BBC Transfer") pursuant to *Restatement (Third) of Property, Servitudes, §6.19,* adopted as operative law in the Virgin Islands by V.I. Code Ann. title 1, § 4.

The BBC Transfer shall be deemed to constitute a transfer of property and/or delivery of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the BBC Transfer or otherwise imposed as a result thereof.

(B)     Assignment of the BBC Leases.  Simultaneous with the BBC Transfer, the BBC Leases then in effect shall be deemed assumed by the Debtor and assigned to the BBC Association pursuant to 11 U.S.C. § 365(a) and (f).  To the extent that the Debtor has collected rent on account of the BBC Leases for a period subsequent to the effective date of the BBC Transfer, said rent (less any related expenses paid by the Debtor for the period after the effective

date of the BBC Transfer) shall be paid to the BBC Association on the effective date of the BBC Transfer. The assignment of the BBC Leases shall be deemed to constitute a transfer of property and/or delivery of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the assignment or otherwise imposed as a result thereof.

(C)    <u>Amendment to Declaration and By-Laws</u>.  Within fifteen (15) days of the entry of an order approving the Disclosure Statement, ESTI shall provide the BBC Association with proposed amendments to the BBC Declaration, BBC Association by-laws and any other documents proposed by ESTI to effectuate the BBC Transfer (the "BBC Transfer Documents").[5] No later than seven (7) days prior to the first scheduled date for the Confirmation Hearing, the BBC Association shall provide written notification to counsel for the Debtor of any and all objections to the BBC Transfer Documents (the "BBC Notice").  If the BBC Association fails to provide the BBC Notice to counsel for the Debtor within the required period of time: (i) the BBC Transfer Documents shall be deemed acceptable to the BBC Association; (ii) the BBC Association shall have waived any and all objections to the form of the BBC Transfer Documents; and (iii) the BBC Association shall promptly execute, endorse and/or accept the BBC Transfer Documents and any and all other documents reasonably requested by the Debtor to effectuate the BBC Transfer.  If the BBC Association provides the BBC Notice to counsel for the Debtor within the required period of time, the Bankruptcy Court will resolve the issues raised in the BBC Notice at the Confirmation Hearing.

(D)    <u>No Impact on Interval Ownership</u>.  Ownership rights in an interval at the Bluebeard's Beach Club & Villas are not affected by the Plan.  The Plan does not affect any maintenance fee, mortgage or other obligation of an interval owner.

The Plan does not divest or alter any right of ownership in an interval at the Bluebeard's Beach Club & Villas.  Moreover, the Plan does not alter or impact the rights or obligations of any interval owner at the Bluebeard's Beach Club & Villas other than as specifically set forth in the Plan.  Unless specifically modified by or pursuant to the Plan, the Declaration which governs the Bluebeard's Beach Club & Villas and the by-laws which govern the BBC Association are unaffected by the Plan.

(E)    <u>Other Consideration</u>.  Holders of Allowed Class 7 Claims will receive no Cash distribution on account of Class 7 Claims.  The Administrative Claims of the BBC Association have been satisfied by virtue of payment of the outstanding post petition maintenance fees by ESTI.  (Moreover, the Modified Post Petition Financing is projected to enable ESTI to access credit necessary for the Debtor to meet its projected day to day operational needs and to pay upcoming maintenance fees to the BBC Association).  Said Holders have received or will receive further benefit by: (a) ESTI's performance of the Waste Water Repairs; (b) the Modified Post Petition Financing by WVO; (c) the "Exit Financing"; (d) the subordination of the WVO Claim (which is necessary to effectuate confirmation of the Plan); (d) funding of the $17,500,000

---

[5] The BBC Declaration Amendments shall include the right of ESTI and/or its successors, assigns and designees to enter upon the Bluebeard's Beach Club & Villas for purposes of marketing, touring, and/or selling its timeshare inventory.  Moreover, nothing contained herein shall be construed to limit or impair ESTI's ability to rent its unsold timeshare inventory.

portion of the Settlement Agreement by the ESTI Related Defendants (which is necessary to effectuate confirmation of the Plan).

### Class 8 – General Unsecured Claims.

Identity.        Class 8 consists of any and all Claims which are <u>not</u> classified as Administrative Claims, Priority Tax Claims, Class 1-7 Claims or Class 9-12 Claims.

Impairment.        This Class is Impaired.

Treatment.        Each Holder of an Allowed Class 8 Claim shall, to the extent not already satisfied pursuant to transactions approved by the Orders of the Bankruptcy Court, receive, at the option of the Debtor, in full satisfaction, settlement and release of and in exchange for such Allowed Class 8 Claim: (A) Cash equal to the full amount of such unpaid Allowed Class 8 Claim on (i) a date within thirty (30) days to one hundred eighty (180) days of the Effective Date, if such Class 8 Claim is Allowed as of the Effective Date, or (ii) a date within thirty (30) days to one hundred eighty (180) days after the date such Class 8 Claim is Allowed by Final Order; or (B) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Allowed Class 8 Claim and the Debtor.  <u>(The Debtor expects to reach a written agreement with Extra Holidays providing for treatment of the Allowed Class 8 Claim of Extra Holidays in a manner less favorable to Extra Holidays than the treatment provided to other Holders of Allowed Class 8 Claims herein</u>).

### Class 9 – Insured Claims Subject to Stay Relief Orders as of the Effective Date.

Identity.        Class 9 consists of any and all Claims which (i) are <u>not</u> classified as Administrative Claims, Priority Tax Claims, Class 1-8 Claims or Class 10-12 Claims; (ii) are covered by any insurance policies in which the Debtor may have an interest, including any civil liability, property, casualty or workmen's compensation and/or directors and officers liability insurance policies; and (iii) are the subject of an Order of the Bankruptcy Court granting stay relief as of the Effective Date.

Impairment.        This Class is <u>not</u> Impaired and is deemed to have accepted the Plan.

Treatment.        Each Holder of an Allowed Class 9 Claim shall, to the extent not already satisfied pursuant to transactions approved by the Orders of the Bankruptcy Court, receive, at the option of the Debtor, in full satisfaction, settlement and release of and in exchange for such Allowed Class 9 Claim the treatment set forth in the Order of the Bankruptcy Court governing such Claim.  Specifically, the Holder of a Class 9 Claim shall not have any Allowed Claim against the Debtor or its estate and shall have no right to share in any distribution from the Debtor or its Estate under the Plan.  Any recovery in favor of the Holder of a Class 9 Claim in the underlying litigation is limited to collection from the Debtor's insurer and is limited to proceeds of any applicable insurance policy.  Other than a potential recovery against said insurer and/or policy, the Holder of a Class 9 Claim shall have no right of recovery against the Debtor or the Debtor's bankruptcy Estate.  Any bankruptcy Proof of Claim filed by the Holder of a Class 9 Claim in this proceeding is hereby waived, and to the extent already filed, is deemed withdrawn.

Voting.        Pursuant to the Orders of the Bankruptcy Court governing such Claims, the Holder of a Class 9 Claim is not be entitled to vote on the Plan and is not be deemed to hold an Allowed Claim against the Debtor and/or the Bankruptcy Estate.

**Class 10 – Insured Claims <u>Not</u> Subject to Stay Relief Orders as of the Effective Date.**

Identity.        Class 10 consists of any and all Claims which (i) are <u>not</u> classified as Administrative Claims, Priority Tax Claims, Class 1-9 Claims or Class 11-12 Claims; and (ii) are covered by any insurance policies in which the Debtor may have an interest, including any civil liability, property, casualty or workmen's compensation and/or directors and officers liability insurance policies.  A Claim is a Class 10 Claim only to the extent of the insurance coverage. Any portion of an otherwise Class 10 Claim that constitutes a deductible, premium, retention or other payment required to be made by the Debtor shall constitute a Class 8 General Unsecured Claim.

Impairment.        This Class is Impaired.

Treatment.        On the Effective Date, each Holder of a Class 10 Claim shall automatically be granted relief from the automatic stay arising under Section 362(a) of the Bankruptcy Code in the Chapter 11 Case to permit such Holder to proceed to prosecute and liquidate its Claim against the Debtor.  When such Claim is liquidated by Final Order of a court of competent jurisdiction, it shall be paid by the Debtor's insurance carrier from any applicable insurance policy in which the Debtor has an insured interest.  The portion of the Claim that constitutes a deductible, premium, retention or other amount that is required to be paid before the insurance carrier will defend and/or satisfy the Claim, shall be treated as a Class 8 Claim. The Debtor may file an Objection to the portion of the Holders Claim which is treated as a Class 8 Claim and the automatic stay shall not be modified as set forth above. If applicable insurance coverage is insufficient to pay the Claim in full after the claim is liquidated by Final Order of a court of competent jurisdiction, the Holder shall have an Allowed Class 8 Claim equal to the amount of such deficiency.

**Class 11 - Claims or interests in Unit 254.**

Identity.  Class 11 consists of the Claims or interests of all parties which hold or claim a license or deed interest in Unit 254 at Hilltop Villas at Bluebeard's Castle.  This Class is divided into Class 11A, Holders of license interests in Unit 254, and Class 11B, Holders of deed interests in Unit 254.

Exhibit "F" to the Disclosure Statement reflects those Class 11A Claimants known to the Debtor as of the date of this Disclosure Statement.  These Claimants hold or claim a license interest in Unit 254 by virtue of their entry of a Vacation License with the Debtor's predecessor in interest (the "Class 11A License Claimants").

Exhibit "G" to the Disclosure Statement reflects those Class 11B Claimants known to the Debtor as of the date of this Disclosure Statement.  These Claimants claim or hold a deeded

interest in Unit 254 pursuant to a Purchase Agreement with ESTI's predecessor in interest (the "Class 11B Deed Claimants").

Impairment.  This Class is impaired.

Treatment of Class 11A License Claimants.  Holders of Allowed Class 11A Claims or interests shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 11A Claims or interests:

(A)    Rejection of Vacation License.  On the Effective Date, the Vacation License of each Class 11A License Claimant shall be deemed rejected by the Debtor pursuant to 11 U.S.C. Section 365(a) and deemed terminated.

(B)    Receipt of Cash or deed.  Holders of Allowed Class 11A License Claims shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 11A License Claims, at the option of the Allowed Class 11A License Claimant[6], either:

(i) Cash in the amount of $500 per licensed week in Unit 254 to be paid by ESTI within thirty (30) days of the Effective Date (the "Cash Option"); or

(ii) conveyance of a deeded interval ownership interest in Unit 254 corresponding to the exact week which had been licensed to the Class 11A License Claimant (the "Deed Option") within thirty days of the Effective Date or the recording of the Class 11A Transfer Documents, as hereafter defined, whichever occurs first.  (Under the Deed Option, the interest of Allowed Class 11A License Claimants would be converted from the Holder of a license to the Holder of a deed for the particular week(s) at Unit 254).

Within fifteen (15) days of the entry of an order approving the Disclosure Statement, ESTI shall provide the Class 11A License Claimants with proposed form of deed, proposed amendments to the Hilltop Villas Declaration and or Hilltop Villas Association by-laws and any other documents proposed by ESTI to effectuate the Deed Option transfer (the "Class 11A Transfer Documents").  No later than seven (7) days prior to the first scheduled date for the Confirmation Hearing, any Class 11A Claimant choosing the Deed Option shall provide written notification to counsel for the Debtor of any and all objections to the Class 11A Transfer Documents (the "Class 11A Notice").  If any Class 11A Claimant choosing the Deed Option fails to provide the Class 11A Notice to counsel for the Debtor within the required period of time: (i) the Class 11A Transfer Documents shall be deemed acceptable to the Class 11A Claimant choosing the Deed Option; (ii) the Class 11A Claimant choosing the Deed Option shall have waived any and all objections to the form of the Class 11A Transfer Documents; and (iii) the Class 11A Claimant choosing the Deed Option shall promptly execute, endorse and/or accept the Class 11A Transfer Documents and any and all other documents reasonably requested by the Debtor to effectuate the Class 11A Transfer.  If any Class 11A Claimant choosing the Deed Option provides the Class 11A Notice to counsel for the Debtor within the required period of time, the Bankruptcy Court will resolve the issues raised in the Class 11A Notice at the

---

[6] Allowed Class 11A Claimants shall choose either the Cash Option or Deed Option by making an election on the Ballot.  Ballots received from Allowed Class 11A Claimants which do not elect either  the Cash Option or Deed Option will be automatically deemed to elect the Deed Option.

Confirmation Hearing.

Subsequent to the transfer of the deed per the Deed Option, all Class 11A Claimants choosing the Deed Option shall be responsible directly to the Hilltop Villas Association or its designee for payment of maintenance fees, assessments and any other applicable obligation, which accrues after the transfer, as is set forth in the Hilltop Villas Declaration, as amended, without subsidy or contribution from the Debtor or Reorganized Debtor.

(C)     Transfer Tax.  All of the transfers contemplated under the Plan involving Allowed Class 11A Claimants shall be deemed to constitute a transfer of property and/or delivery of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the transfers or otherwise imposed as a result thereof.

(D)     Retention of Claims of ESTI.  Nothing contained herein has the effect of, or shall be deemed to, release or compromise any claim of the Debtor against any Class 11A Claimant for maintenance fees or any other debt or obligation due to Debtor (under the Vacation License or otherwise) which exists as of the conveyance of the Cash Option or Deed Option, whichever is applicable.  The Debtor does not release and/or give up such claims, but rather specifically reserves all of its rights and claims against any the Class 11A Claimants.

Treatment of Class 11B License Claimants.  Holders of Allowed Class 11B Claims or interests shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 11B Claims or interests:

(A)     Receipt of deed.  Holders of Allowed Class 11B Deed Claimants shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 11B Deed Claims, deeds to the interval(s) described and set forth in the particular Purchase Agreement between the Debtor and the Class 11B Claimant.  Allowed Class 11 Deed Claimants shall receive no Cash distribution under the Plan.  The transfer of the deed to the Allowed Class 11B Claimant shall occur within thirty days of the Effective Date or the recording of the Class 11B Transfer Documents, as hereafter defined, whichever occurs first.

Within fifteen (15) days of the entry of an order approving the Disclosure Statement, ESTI shall provide the Class 11B Deed Claimants with the proposed form of deed, proposed amendments to the Hilltop Villas Declaration and or Hilltop Villas Association by-laws and any other documents proposed by ESTI to effectuate the transfer of the deed (the "Class 11B Transfer Documents").  No later than seven (7) days prior to the first scheduled date for the Confirmation Hearing, any Class 11B Claimant shall provide written notification to counsel for the Debtor of any and all objections to the Class 11B Transfer Documents (the "Class 11B Notice").  If any Class 11B Claimant fails to provide the Class 11B Notice to counsel for the Debtor within the required period of time: (i) the Class 11B Transfer Documents shall be deemed acceptable to the Class 11B Claimant; (ii) the Class 11B Claimant shall have waived any and all objections to the form of the Class 11B Transfer Documents; and (iii) the Class 11B Claimant shall promptly execute, endorse and/or accept the Class 11B Transfer Documents and any and all other documents reasonably requested by the Debtor to effectuate the Class 11B Transfer.  If any

Class 11B Claimant provides the Class 11B Notice to counsel for the Debtor within the required period of time, the Bankruptcy Court will resolve the issues raised in the Class 11B Notice at the Confirmation Hearing.

Subsequent to the transfer of the deed, all Class 11B Claimants shall be responsible directly to the Hilltop Villas Association or its designee for payment of maintenance fees, assessments and any other applicable obligation, which accrues after the transfer, as is set forth in the Hilltop Villas Declaration, as amended, without subsidy or contribution from the Debtor or Reorganized Debtor.

(B)    Transfer Tax.  All of the transfers contemplated under the Plan involving Allowed Class 11B Claimants shall be deemed to constitute a transfer of property and/or delivery of instruments pursuant to 11 U.S.C. § 1146(a) so as to relieve the Debtor from any responsibility to pay any stamp or similar tax under required to effectuate the transfers or otherwise imposed as a result thereof.

(C)    Retention of Claims of ESTI.  Nothing contained herein has the effect of, or shall be deemed to, release or compromise any claim of the Debtor against any Class 11B Claimant for maintenance fees or any other debt or obligation due to Debtor (under the Purchase Agreement or otherwise) which exists as of the conveyance of the deed to the Allowed Class 11B Claimant.  The Debtor does not release and/or give up such claims, but rather specifically reserves all of its rights and claims against any the Class 11B Claimants.

**Class 12 – Claim of Wyndham Vacation Ownership, Inc.**

Identity.        Class 12 consists of the pre-petition Claims of Wyndham Vacation Ownership, Inc. ("WVO").  Specifically, Class 12 consists of the proof of claim filed by WVO on November 12 or 13, 2007 in the amount of $13,470,223 (claim number 27), (the "WVO Claim").  Class 12 does not consist of the Claims of WVO which arise out of the Modified Post Petition Financing and/or Exit Financing between WVO and ESTI.

Impairment.    The Class 12 Claim is Impaired.

Treatment.      The WVO Claim is deemed an Allowed general unsecured Claim in the amount of $13,470,223.  The Holder of the Allowed Class 12 Claim shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Class 12 Claim, Cash equal to the full amount of such unpaid Allowed Class 12 Claim on such terms and conditions as may be agreed upon in writing by the Holder of such Allowed Class 12 Claim and the Debtor, provided however, that the Holder of the Allowed Class 12 Claim shall not receive any payment on account of such Claim until after the Debtor has fully satisfied its Plan obligations to Holders of any and all Allowed Administrative Claims; Allowed Priority Tax Claims; and Allowed Class 1-11 Claims.  After satisfaction of all of the Debtor's obligations under the Plan to the Holders of Allowed Administrative Claims; Allowed Priority Tax Claims; and Allowed Class 1-11 Claims, the Debtor may effectuate payment and/or other satisfaction of the Allowed Class 12 Claim on such terms and conditions as may be agreed upon in writing by the Holder of such Allowed Class 12 Claim and the Debtor, including, but not limited to, modifying the Modified Post Petition

Financing and/or Exit Financing loan agreements to include repayment of the Allowed Class 12 Claim as part of one or both of those agreements.

**Class 13 – Interests.**

<u>Identity</u>.       Class 13 consists of all Interests in the Debtor.  Equivest Finance is the Holder of all Interests in the Debtor.

<u>Impairment</u>.    This Class is <u>not</u> Impaired and is deemed to have accepted the Plan.

<u>Treatment</u>.      In exchange for its contributions to the Settlement Agreement and Plan, Equivest Finance shall retain its Interests and equity in the Debtor and shall be treated as a Released Person, entitled to the protections of the releases, discharges and injunctions contained within the Plan.

## ARTICLE V

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS

**5.1    Administrative Claims.**   All Administrative Claims against the Debtor shall be treated as follows:

**(a)    Time for Filing Administrative Claims.**   The holder of an Administrative Claim whether or not disputed, other than a Fee Claim or a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court, and serve a copy upon Debtor's counsel, notice of such Administrative Claim within thirty (30) days after the entry of the Confirmation Order pursuant to Bankruptcy Rule 3020(b), or be forever barred from receiving payment.  The notice of such Administrative Claim must include, at a minimum:

> (i)   the name and address of the holder of the Claim;

> (ii)  the amount of the Claim;

> (iii) the date on which the Claim arose;

> (iv)  a detailed explanation of the basis of the Claim with all pertinent documents attached; and

> (v)   whether such Claim has been allowed pursuant to a Final Order.

Failure to file notice of an Administrative Claim as required under this Section 5.1(a) of the Plan shall result in the Administrative Claim being forever barred and discharged.

**(b)    Time for Filing Fee Claims.**   Each Professional Person who holds or asserts an Administrative Claim that is a Fee Claim shall file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within sixty (60) days after the Effective Date.

23

The failure to file the Fee Application as required under this Section 5.1(b) of the Plan shall result in the Fee Claim being forever barred and discharged. The Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding procedures for the payment of Fee Claims.

(c)    **Allowance of Administrative Claims.**  An Administrative Claim with respect to which has been properly filed pursuant to Section 5.1(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed on or before sixty (60) days after notice of entry of Confirmation Order pursuant to Bankruptcy Rule 3020(b).  If an objection is filed within the time period set forth in this section, the Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed pursuant to Section 5.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by a Final Order.

(d)    **Payment of Administrative Claims.**  Each holder of an Allowed Administrative Claim shall be paid by the Debtor or Reorganized Debtor the full amount of such holder's Allowed Administrative Claim on the later of: (i) the Effective Date, or (ii) ten (10) days after such Claim becomes Allowed by Final Order, unless other treatment is agreed upon by such Holder and the Debtor which is evidenced by written agreement.  However, a liability incurred in the ordinary course of the administration of the Debtor's estate by the Debtor may be paid by the Debtor or Reorganized Debtor in the ordinary course.

**5.2  Priority Tax Claims**.  Priority Tax Claims are income, employment and other taxes described in Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each Holder of such a Priority Tax Claim receive payment in full of the claim on the Effective Date or the present value of such claim in deferred cash payments over a period not exceeding six (6) years from the date of assessment of such tax.

Unless otherwise agreed to between the Debtor and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be paid by ESTI the full amount of such Holder's Allowed Priority Tax Claim, plus interest, via installment payments.  These payments shall: (A) commence on (i) a date within thirty (30) days of the Effective Date, if such Priority Tax Claim is Allowed as of the Effective Date, or (ii) a date within thirty (30) days after the date such Priority Tax Claim is Allowed by Final Order; and (B) continue to be paid by Debtor to each Holder on a quarterly basis over the next nineteen (19) consecutive quarters. These payments shall each consist of one-twentieth (1/20) of the amount of the Allowed Priority Tax Claim plus interest at the rate of five (5%) per annum on the then outstanding amount of the Allowed Priority Tax Claim (calculated from the date that the Priority Tax Claim is Allowed by Final Order).  The Debtor shall have the right to satisfy the outstanding principal and accrued interest amount of any Allowed Priority Tax Claim at any time prior to the expiration of the six year period, without penalty.

# ARTICLE VI

## MEANS FOR EXECUTION OF THE PLAN

**A.      Means For Implementation of Plan.**

Title to all Assets, not previously liquidated, sold or otherwise transferred or to be transferred pursuant to the Plan, shall remain and re-vest in the Reorganized Debtor upon the Effective Date.  Those Assets shall re-vest in the Reorganized Debtor free and clear of all liens, Claims, and encumbrances of any Creditor or other Persons or Entities except the obligations, rights and liens continued or granted pursuant to the Plan and/or the Confirmation Order.

**B.      Post-Confirmation Structure.**

**1.      Continued Corporate Existence of ESTI**. ESTI shall continue to exist after the Effective Date in accordance with the laws of the Virgin Islands and pursuant to the certificate of incorporation and by-laws in effect prior to the Effective Date.

**2.      Utilize Directors and Officers; Effectuating Documents; Further Transactions**.  On and after the Effective Date, Equivest Finance shall continue to be the sole shareholder of ESTI. On and after the Effective Date, the then existing officers and directors of ESTI ("Management") shall continue to serve as officers and directors of the Reorganized Debtor.  Management is authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be appropriate to effectuate and further evidence the terms and conditions of the Plan.

**3.      Rights, Powers and Duties of the Management**.  Subject to the certificate of incorporation, by-laws and other governing documents of ESTI, as well as applicable law, Management shall have all the rights, powers and duties necessary to carry out the business of ESTI post confirmation.  Moreover, subject to the provisions of the Plan, Management shall have all the rights, powers and duties necessary to carry out ESTI's responsibilities under the Plan including, without limitation:

(i)      performing ESTI's obligations under this Plan;

(ii)      investing the Estate's Cash in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof backed by the full faith and credit of the United States of America, including funds consisting solely or predominantly of such securities; (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state or territory thereof; or (C) any other investments that may be permissible under (i) Section 345 of the Bankruptcy Code or (ii) any Order of the Court entered in the Chapter 11 Case;

(iii)      calculating and paying all distributions to be made under this Plan and other Orders of the Court to Holders of Allowed Claims;

25

(iv)    filing, prosecuting, compromising or otherwise resolving Causes of Action, objections to Claims, appeals and any other litigation involving the Debtor or the Plan;

(v)    employing, supervising and compensating professionals retained to represent the interests of and serve on behalf of ESTI and/or the Estate;

(vi)    seeking determination of Tax liability under Section 505 of the Bankruptcy Code;

(vii)    making and filing Tax returns for the Debtor, and as necessary, the Reorganized Debtor;

(viii)    closing the Chapter 11 Case, including seeking entry of the Final Decree; and

(ix)    taking any and all other actions necessary or appropriate to implement or consummate this Plan.

**C.    Funding.**    The Plan shall be funded by all Property of the Estate, which includes the proceeds received and remaining from the operation of ESTI's business, as well as the contributions from third parties specifically set forth in the Plan such as: (a) the Modified Post Petition Financing; (b) the Exit Financing; and (c) the funding of the $17,500,000 portion of the Settlement Agreement. The Plan has and/or shall be implemented by: (a) consumating of the transactions contemplated under the Settlement Agreement; (b) consumating of the transactions contemplated under the ESTI/EH Settlement Agreement; (c) the Modified Post Petition Financing; (d) the Exit Financing; and (f) the subordination of the WVO Class 11 Claim as set forth in the Plan.

**D.    Post Confirmation Fees and Costs.**    ESTI may retain, or may continue to retain, professionals and other service providers after the Effective Date.  ESTI  may pay professionals and other service providers for services rendered or expenses incurred by such professionals or service providers after the Effective Date in the ordinary course of business.  Services rendered or expenses incurred by professionals and other service providers after the Effective Date may be paid by ESTI in the ordinary course of its business without the necessity of the filing of fee applications by such parties with the Bankruptcy Court.

**E.    Distributions.**    Subject to Bankruptcy Rule 9010, distributions and deliveries to Holders of Allowed Claims or Debtor Interests shall be made at the address of each such Holder as set forth on the Proof of Claim filed by such Holder (or at the last known addresses of such Holders if no Proof of Claim is filed). If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until ESTI is notified of such Holder's then current address, at which time all missed distributions, to the extent provided under this Article shall be made to such Holder without interest.  The Debtor shall have no duty to attempt to locate Claimants whose distributions are returned.

Checks issued by the Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days after the date of issuance.  Requests for re-issuance of any check

shall be made directly to the Debtor by the Holder of the Allowed Claims.  (Any costs with reissuing a check shall be borne by the Claimant.)

Any claim with respect to any voided check or check returned as undeliverable shall be made on or before one hundred and eighty (180) days after the date of issuance of such check. After such dates, all claims as to voided checks shall be discharged and forever barred and the funds shall become the sole property of the Debtor free and clear of any claim or interest of said Claimant.

**F.     Provisions For Treatment of Disputed Claims.**  Not later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, the Debtor shall file any objections to Claims.  No distribution will be made to any Holder of a Contested Claim unless and until such Claim becomes an Allowed Claim pursuant to Final Order.

**G.     Pending Actions.**  The Debtor has commenced certain actions during the course of the Chapter 11 Case.  A number of those actions may be pending as of the Effective Date of the Plan.  To the extent that any action commenced by the Debtor is pending before the Bankruptcy Court (or other court of competent jurisdiction) on the Effective Date of the Plan, said action will continue, after confirmation of the Plan or occurrence of the Effective Date.

**H.     Retention of Jurisdiction.**  The Plan provides for the retention of jurisdiction by the Bankruptcy Court over the Chapter 11 Case for the purpose of determining all disputes relating to Claims or Interests and other issues presented by or arising under the Plan and to determine all other matters pending in the Bankruptcy Court on the Effective Date.  If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Case, the retention of jurisdiction pursuant to the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**I.     Non-Severability of Plan Provisions.**  The provisions of the Plan, including the Settlement Agreement, Modified Post Petition Financing, subordination of the WVO Class 12 Claim the Exit Financing and the releases, injunctions and discharge, are inextricably intertwined with the Confirmation Order and are non-severable and mutually dependent.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, including the terms and conditions of the Settlement Agreement, Modified Post Petition Financing, subordination of the WVO Class 12 Claim, the Exit Financing, and the releases, injunctions and discharge are valid and enforceable pursuant to their terms.

**J.     Modification of the Plan.**  The Debtor may amend or modify the Plan if such amendment or modification is made in writing before the Effective Date provided that (i) the Plan, as modified, meets the requirements of Bankruptcy Code Sections 1122 and 1123; and (ii) the Debtor shall have complied with Bankruptcy Code Section 1125 and Bankruptcy Rule 3019.  The Plan may be modified at any time after confirmation and before or after its substantial consummation provided that (i) the Plan, as modified, meets the requirements of Bankruptcy Code Section 1122 and 1123, (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129; and (iii) the circumstances warrant such modification.

**K.      Avoidance Actions.**  The Debtor and its professionals have analyzed the viability of avoidance actions under sections 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.  The Debtor has not identified any avoidance actions and accordingly, such avoidance actions, if any, will deemed to have been abandoned by the Debtor on the Effective Date.

**L.      Non-Consensual Confirmation.**  In the event that any Impaired Plan Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Section 1126 of the Bankruptcy Code, after giving effect to any vote designated under Section 1126(e) of the Bankruptcy Code, the Debtor may request the Bankruptcy Court to confirm the Plan, notwithstanding such failure to accept.

## ARTICLE VII

### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR DEBTOR INTERESTS

**7.1      Classes Entitled to Vote.**  Each Class of Claims which is Impaired under the Plan shall be entitled to vote with respect to the Plan.  However, as detailed in the Disclosure Statement, not all Holders of Claims in an Impaired Class are entitled to vote or have their vote counted for purposes of acceptance/rejection by a Class.

**7.2      Class Acceptance Requirement.**  With respect to any Class of Claims which is impaired and entitled to vote, such Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class (excluding Insiders) that vote on the Plan. With respect to any Class of Debtor Interests which is Impaired and entitled to vote, such Class of Debtor Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of such Class that vote on the Plan.

Any Class of Claims whose members fail to vote shall be deemed to have accepted the Plan for all purposes.

**7.3      Confirmation Without Acceptance.**  If any Impaired Class of Claims or Debtor Interests fail to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Plan Proponent may request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code section 1129(b), provided that at least one Impaired Class as voted to accept the Plan.

## ARTICLE VIII

### PROVISIONS GOVERNING DISTRIBUTIONS

**8.1      Date of Distributions.**  Any and all distributions and deliveries to be made under the Plan shall be made on the Distribution Date, or the next succeeding Business Day if such date is not a Business Day, except as otherwise provided for in the Plan.

**8.2      Means of Cash Payment.**  Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a domestic Financial Institution.

28

**8.3**    **Delivery of Distributions**.    Subject to Bankruptcy Rule 9010, distributions and deliveries to Holders of Allowed Claims or Debtor Interests shall be made at the address of each such Holder as set forth on the Proof of Claim filed by such Holder (or at the last known addresses of such Holders if no Proof of Claim is filed).  If any Holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address, at which time all missed distributions, to the extent provided under this Article shall be made to such Holder without interest.  The Debtor shall have no duty to attempt to locate Claimants whose distributions are returned.

Checks issued by the Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days after the date of issuance.  Requests for re-issuance of any check shall be made directly to the Debtor by the Holder of the Allowed Claims.  (Any costs with reissuing a check shall be borne by the Claimant.)

**8.4**    **Time Bar to Cash Payments.**    Any claim with respect to any voided check or check returned as undeliverable shall be made on or before that one hundred eighty (180) days after the date of issuance of such check.  After such dates, all claims as to voided checks shall be discharged and forever barred and the funds shall become the sole property of the Reorganized Debtor free and clear of any claim or interest of said Claimant.

**ARTICLE IX**

**INJUNCTION, RELEASES & DISCHARGE**

**9.1**    **DISCHARGE AND RELEASE OF DEBTOR.**

(a)    Except for distributions and obligations specifically created or affirmed under this Plan, or as otherwise provided in the Confirmation Order, on the Effective Date the Confirmation Order shall operate as a discharge under Section 1141(d)(1) of the Bankruptcy Code and as a release of any and all debts (as such term is defined in Section 101(12) of the Bankruptcy Code) of, and Claims against, the Debtor that arose at any time before the Confirmation Date, including but not limited to, all principal and interest, whether accrued before, on or after the Petition Date, regardless of whether (i) a Proof of Claim in respect of such Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to Section 502 of the Bankruptcy Court, or (iii) the Holder of such Claim has voted on this Plan or has voted to reject this Plan.  Without limiting the generality of the foregoing, on the Effective Date the Debtor shall be discharged from any debt that arose before the Confirmation Date and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code and shall have all of the benefits and protections set forth in Section 1141(d)(i) of the Bankruptcy Code.  Except as otherwise specifically provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any manner the discharge granted upon Confirmation of this Plan pursuant to Section 1141 of the Bankruptcy Code.

(b)    The discharge and release of the Debtor as provided in this Plan shall not diminish or impair the enforceability of any insurance policies that may cover claims against any Debtor or any other Entity.  The discharge and release of the Debtor as provided in this Plan shall not

diminish or impair any claims arising after the Confirmation Date with respect to the non-monetary obligations of the Reorganized Debtor under any insurance policy.  The insurers under all policies to which the Debtor is a party will continue to be responsible for insurance claims, including, without limitation, future claims, in accordance with the terms of the insurance policies and the requirements of state and other applicable law, notwithstanding the effect of the discharge and release under this Plan on any requirement under the insurance policies that the Debtor first satisfy any monetary obligations arising prior to the Confirmation Date.

(c)     The rights afforded in this Plan and the treatment of all Claimants, including Interval Owners, shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued thereon, which arose prior to the Confirmation Date, against the Debtor and the Bankruptcy Estate, or its assets, properties, or interests in property.  Except as otherwise provided in the Plan, on the Effective Date all Claims and demands against the Debtor and the Bankruptcy Estate shall be satisfied, discharged, and released in full.

(d)     The Reorganized Debtor shall not be responsible for any obligations of the Debtor or the Bankruptcy Estate except those expressly assumed by the Reorganized Debtor pursuant to this Plan.

(e)     All Persons, Entities and Claimants shall be precluded and forever barred from asserting against the Debtor and the Reorganized Debtor, or their assets, properties, or interests in property any other or further Claims or demands based upon any act or omission, transaction or other activity, event or occurrence of any kind or nature that occurred prior the Confirmation Date, whether or not the facts of the legal basis therefore were known or existed prior to the Confirmation Date, except as expressly provided in this Plan.

With respect to any debts discharged by operation of law under Bankruptcy Code §§ 524(a) and 1141, the discharge of the Debtor operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Debtor, whether or not the discharge of such debt is waived; provided, however, that any obligations of the Reorganized Debtor under this Plan are not so discharged.

**9.1.1   Disallowed Claims.**  On and after the Effective Date, the Debtor, the Reorganized Debtor and its Representatives shall be fully and finally discharged of any liability or obligation on a Disallowed Claim and any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of a Claimant's right to move for reconsideration of such order pursuant to Bankruptcy Code §502 or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

**9.2     *ESTI RELATED ENTITY INJUNCTION*[7].**

---

[7] Several portions of Article 9 are highlighted per Fed. Bank. P. 3016(c)

Pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Bankruptcy Code § 105(a), the Confirmation Order shall operate to effect issuance of the "ESTI Related Entity Injunction" to take effect as of the Effective Date.

**9.2.1    _The ESTI Related Entity Injunction._**  All Persons and/or Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, demand, or cause of action, against any of the ESTI Related Defendants based upon, relating to, arising out of, and/or in any way connected with: ESTI; the Resorts, including but not limited to, the management of any Resort or HOA, or the sale of any interval at a Resort; the Settlement Agreement; the ESTI/Extra Holidays Settlement Agreement; the Modified Post Petition Financing; the Exit Financing; and/or the Chapter 11 Case, whenever and wherever arisen or asserted, (including all Claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty), shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim, demand, or cause of action, including:

(a)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial arbitration, administrative, or other proceeding) in any forum against or affecting any ESTI Related Defendant, or any property interest in property of any ESTI Related Defendant;

(b)    enforcing, levying, attaching (including any pre-judgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any ESTI Related Defendant or any property or interest in property of any ESTI Related Defendant;

(c)    creating, perfecting, or otherwise enforcing in any manner directly or indirectly, any encumbrance against any ESTI Related Defendant, or any property or interest in property of any ESTI Related Defendant;

(d)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner directly or indirectly, any amount against any liability owed to any ESTI Related Defendant, or any property or interest in property of any ESTI Related Defendant; and

(e)    proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the Plan, except in conformity and compliance with the Plan.

**9.2.2    _Reservations from the ESTI Related Entity Injunction._** Notwithstanding anything to the contrary in 9.2.2 above, the ESTI Related Entity Injunction shall not enjoin:

(a)    the rights of any Person or Entity to the treatment accorded it under this Plan; and

(b)    the rights of the Reorganized Debtor to prosecute any cause of action or to assert any Claim, demand, debt, obligation, or liability for payment against any ESTI Related Defendant, based on or arising from the Modified Post Petition Financing, Exit Financing, Settlement Agreement or any written agreement between ESTI and the ESTI Related Defendant.

### 9.3    *RELEASED MATTERS INJUNCTION.*

Pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Bankruptcy Code § 105(a), the Confirmation Order shall operate to effect issuance of the "Released Matters Injunction" to take effect as of the Effective Date.

9.3.1    *The Released Matters Injunction.*  All Persons and/or Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, demand, or cause of action, against any Entity released under any provision of this Plan, the Settlement Agreement, the ESTI/Extra Holidays Settlement Agreement, and/or any Final Order entered in the Chapter 11 Case, shall be enjoined from taking any action for the purpose of directly or indirectly collecting` recovering, or receiving payments, satisfaction, or recovery on account of such released matters including:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Entity released under any provision of this Plan, the Settlement Agreement, the ESTI/Extra Holidays Settlement Agreement, and/or any Final Order entered in the Bankruptcy Case, or any property or interest in property of any such released Entity;

(b)    enforcing, levying, attaching (including any prejudgment, attachment), collecting, or otherwise recovering by any means or in any manner whether directly or indirectly any judgment, award, decree or other order against any Entity released under any provision of this Plan, the Settlement Agreement, the ESTI/Extra Holidays Settlement Agreement, and/or any Final Order entered in the Bankruptcy Case, or any property or interest in property of any such released Entity;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance against any Entity released under any provision of this Plan, the Settlement Agreement, the ESTI/Extra Holidays Settlement Agreement, and/or any Final Order entered in the Bankruptcy Case, or any property or interest in property of such released Entity; and

(d)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Entity released under any provision of this Plan, the Settlement Agreement, the ESTI/Extra Holidays Settlement

*Agreement, and/or any Final Order entered in the Bankruptcy Case, or any property interest in property of any such released Entity.*

**9.3.2   *Reservations from the Released Matters Injunction*.**  Notwithstanding anything to the contrary above, the injunction provided in Section 9.3.1 of this Plan shall not enjoin:

(a)    the rights of any Person or Entity to the treatment accorded it under this Plan;

(b)    the rights of the Reorganized Debtor to prosecute any cause of action or to assert any Claim, demand, debt, obligation, or liability for payment against any Entity based on matters not specifically released under the Plan, the Settlement Agreement, the ESTI/Extra Holidays Settlement Agreement, and/or any Final Order entered in the Bankruptcy Case,

## 9.4    TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY.

**9.4.1   *Injunctions and/or Automatic Stay in Existence Immediately prior to Confirmation*.**  All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Case, whether pursuant to Bankruptcy Code §§ 105, 362, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms. In addition, on and after the Confirmation Date, the Reorganized Debtor may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

**9.4.2   *Injunctions Provided for in this Plan*.**  Each of the injunctions provided for in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by this Plan. Notwithstanding anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

## 9.5    ADDITIONAL RELEASES AND INDEMNIFICATION.

### 9.5.1   Representatives of the Debtor.

**(a) Release of Representatives of the Debtor**.  For good and valuable consideration, the receipt and sufficiency of which is acknowledged in this Plan, all Professional Persons retained in the Chapter 11 Case by the Debtor will be released, as of the Effective Date, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter

arising, in law, equity, or otherwise, that any Person or Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Debtor Interest or other Entity, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date for Claims or liabilities resulting from their services as representatives of the Debtor prior to the Effective Date so long as, in each case such action, or failure to act, did not constitute willful misconduct, provided however, that such releases shall not preclude a governmental entity from enforcing its police and regulatory powers.

**(b) Indemnification of Representatives of the Debtor.** The Reorganized Debtor will defend, indemnify, and hold harmless to the fullest extent permitted by applicable law, all Professional Persons retained in the Chapter 11 Case by the Debtor, on and after the Effective Date for all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever that are purported to be released pursuant to Section 9.5.1(a) herein.

**9.5.2** **Releases Per Settlement Agreement.** Upon the Effective Date the parties to the Settlement Agreement shall each execute and deliver to the requisite parties, all of those releases required under the Settlement Agreement.

**9.5.3** **Specific Releases by Holders of Claims and Interval Owners To ESTI Related Defendants.** Without limiting any other provisions of this Plan or the Settlement Agreement, each Holder of a Claim and each Interval Owner shall be deemed to unconditionally have released the Released Persons, including the ESTI Related Defendants, as of the Effective Date from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Person or Entity would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, arising out of, based upon and/or relating to: ESTI or the Reorganized Debtor; the Case; the negotiation, formulation, and preparation of this Plan or any related agreements, instruments, or other documents; the Resorts, including but not limited to, the management of any Resort or HOA, or the sale of any interval at a Resort; the Settlement Agreement; the ESTI/Extra Holidays Settlement Agreement; the Modified Post Petition Financing; or the Exit Financing.

The payment by various of the Released Persons of various administrative expenses, including Post Petition maintenance fees to the HOA's and funding for various repairs at the Resorts; the Modified Post Petition Financing; the Exit Financing; the subordination of the WVO Class 12 Claim; the funding of the Settlement Agreement; and the EH/Extra Holidays Settlement Agreement constitute good and sufficient consideration for the specific releases granted to the Released Persons herein.

## ARTICLE X

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**10.1** **Executory Contracts and Unexpired Leases.** With the exception of the Debtor's executory contracts and unexpired leases which have been (a) rejected or assumed pursuant to the Bankruptcy Code or an order of the Bankruptcy Court prior to the Effective Date, (b) assumed and assigned pursuant to an order of the Bankruptcy Court or this Plan, or (c) designated as Vacation Licenses subject to Class 11A, any and all executory contracts and unexpired leases to which the Debtor is a party, shall be deemed to be assumed on the Effective Date in accordance with the provisions and requirements of Bankruptcy Code sections 365 and 1123 unless specifically set forth herein. Nothing contained herein shall obligate the Plan Proponent to file any list of assumed executory contracts or unexpired leases.

**10.2** **Cure of Defaults.** The Confirmation Order shall establish the payment, if any, required to cure any defaults as required by Bankruptcy Code section 365(b) which shall be paid as provided in Section 5.1(d). The Debtor will promptly make such cure payments as provided for in the Confirmation Order. The Debtor does not anticipate that there are any monetary defaults under any leases or executory contracts which are required to be cured.

**10.3** **Claims Based on Rejection of Executory Contracts or Unexpired Leases.** Except for Holders of Class 11A License Claims, all Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing Claims in any order of the Bankruptcy Court approving such rejection, (ii) thirty (30) days after the date of rejection, or (iii) thirty (30) days after the entry of the Confirmation Order. Any such Claim, which is not the subject of a timely filed Proof of Claim, will be barred forever from assertion against the Debtor, the Assets, or the Bankruptcy Estate. Notice of the deadline as set forth in the preceding sentence shall be by direct notice to known parties to such rejected contracts and by the notice of entry of the Confirmation Order with respect to unknown contracts or parties.

Except for Holders of Class 11A License Claims, unless otherwise ordered by the Bankruptcy Court, all properly filed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as Class 8 General Unsecured Claims.

**ARTICLE XI**

**OBJECTIONS TO CLAIMS**

**11.1** **Objection Deadline.** As soon as practicable, but in no event later than sixty (60) calendar days after the Effective Date (or such later date as may be established by Order of the Bankruptcy Court), objections to Claims (other than Administrative Claims) shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. Objections to Administrative Claims must be filed pursuant to the provisions of section 5.1(c) of the Plan.

**11.2** **Treatment of Disputed Claims.** No distribution will be made to any holder of a Contested Claim unless and until such Claim becomes an Allowed Claim pursuant to Final Order of the Bankruptcy Court. On the Distribution Date, with respect to any claim to which the

Debtor has filed an objection which has not been resolved by way of Final Order, the full amount of the pro rata dividend of the Contested Claim shall be retained by the Debtor.  At such time as the Contested Claims are resolved by Final Order, the dividend will be released to such creditors, without interest, if the Contested Claim amounts are allowed in their entirety.  To the extent that the Contested Claim amounts are reduced or expunged, then the remainder of the dividend initially retained by the Debtor on account of such claim shall be distributed on a pro rata basis pursuant to the terms of the Plan.

**ARTICLE XII**

**<u>MISCELLANEOUS PROVISIONS</u>**

**12.1.   <u>Effect of Confirmation Order</u>.**  The provisions of the Plan shall be binding upon the Debtor and all Creditors, regardless of whether such Holders are Impaired or whether such parties accept the Plan, upon Confirmation thereof.

**12.2.   <u>Binding Effect</u>.**  The rights, benefits and obligations conferred on any Person by the Plan will be binding upon, and inure to the benefit of the executors, agents, successors, heirs, affiliates, authorized representatives, counsel and assigns of any such Persons including any Person claiming an interest in any Asset through such Person, except as otherwise expressly provided in the Plan.

**12.3   <u>Retention of Jurisdiction</u>.**    After the Confirmation Date, the Bankruptcy Court shall retain subject matter jurisdiction over the Chapter 11 Case for various purposes including those at (i) through (ix) below:

(i)     To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims;

(ii)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(iii)   To determine any and all applications pending on the Effective Date for the rejection, the assumption or the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(iv)    To determine any and all applications, adversary proceedings, and contested or litigated matters, including those pending on the Effective Date.

(v)     To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Court;

(vi)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Person's obligations hereunder;

(vii)    To enforce the provisions of Article XI;

(viii)   To issue orders in aid of execution of the Plan to the extent authorized by Bankruptcy Code section 1142; and

(ix)     To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with and including the Plan and the implementation thereof, the Confirmation Order, the Effective Date or any Distribution Date.

**12.4    Failure of Court to Exercise Jurisdiction.**   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 Case, Section 12.1 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other Court having competent jurisdiction with respect to such matter.

**12.5    Modification of Plan.** Modifications of the Plan may be made in writing by the Plan Proponents at any time before confirmation, provided that pursuant to Bankruptcy Code Section 1127, (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, and (b) the Plan Proponents shall have complied with Bankruptcy Code section 1125.

The Plan may be modified at any time after confirmation and before or after its substantial consummation by the Plan Proponents provided that pursuant to Bankruptcy Code section 1127, (a) the Plan, as modified, meets the requirements of the Bankruptcy Code, and (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Bankruptcy Code section 1129.  A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified unless, within any time period fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**12.6    Inconsistencies Between Plan and Disclosure Statement.**   In the event there are inconsistencies between the Plan and Disclosure Statement, the terms of the Plan shall control.

Equivest St. Thomas, Inc.

By: /s/ Peter Hernandez
        Peter Hernandez, President

Dated: March 14, 2008

M:\PET\EQUIVEST\PLEADINGS\PLAN\Final Plan\Plan-01.doc

37